

# KAREN S. RUNYON

Forensic Document Examiner

400 SOUTH FOURTH STREET SUITE 505 · MINNEAPOLIS, MINNESOTA 55415 PH. 612.338.5414

April 11, 2008

Mr. John Sperry
John Sperry Law Offices
Suite 102
12700 Anderson Lakes Parkway
Eden Prairie, Minnesota 55344

Re: _Argent Mortgage v. Jon Christopher, et al._
    U.S. District Court File No. 07-CV-3158 (DWF/AJB)

## MATERIAL SUBMITTED:

On March 10, 2008 I received the following documents from Mr. John Sperry and Mr. Jon C. Christopher:

### Known Writing Standards:

**K-1.** A machine copy of a page 14 signature page, notarized April 25, 2005, submitted as bearing the non-requested known signature of Jon C. Christopher.

**K-2. (a-d)** Machine copies of a three-page Forgery Claim Report and one-page Affidavit of Fraudulent Account Opening, notarized November 2, 2006, submitted as bearing the non-requested known signatures, handprinting and numerals of Jon C. Christopher.

**K-3.** An original one-page exemplar bearing three signatures and one handprinted name, dated March 1, 2008, submitted as bearing the non-requested known signatures handprinting and numerals of Jon C. Christopher.

**K-4. (a-l)** An original twelve-page exemplar demonstrating the requested known writing with both the right and left hands including testing of the range of writing variation of Jon C. Christopher.

Page 2 – Mr. John Sperry
April 11, 2008

**<u>Questioned:</u>**

    **Q-3.** A machine copy of two Minnesota Driver's Licenses, submitted as bearing a
        questioned "Jon C. Christopher" signature and "2-2-05" date.

On March 27, 2008, I received the following document from Mr. Patrick D. Robben via
messenger service:

    **Q-1. (a-o)** An original fifteen-page Mortgage, Scott County Recorded Document No.
        A688716, notarized February 2, 2005, submitted as bearing questioned "JCC"
        initials on pages one through thirteen, and one questioned "Jon C. Christopher"
        signature on page fourteen.

    **Q-2. (a-c)** An original Adjustable Rate Rider, dated February 2, 2005, submitted as
        bearing questioned "JCC" initials on pages one and two, and one questioned
        "Jon C. Christopher" signature on page three.

On March 31, 2008, I received the following document from Mr. Jon C. Christopher:

    **K-5. (a-o)** A machine copy of a fifteen-page Mortgage, notarized February 2, 2005,
        submitted as bearing the non-requested known initials and signature of Jon C.
        Christopher.

    **K-6.** A machine copy of a letter addressed to Argent Mortgage Company, LLC, dated
        April 22, 2005, submitted as bearing the non-requested known signature
        of Jon C. Christopher.

On April 2, 2008 I received the following documents from Special Agent Valarie Ingram of the
Internal Revenue Service:

    **K-7.** Original check numbers 9624, 9639, 9646, 9649, 9655, 9659, 9751, 9752, 9755,
        9759, 9765, 9766, 9769, 9771, 9772, 9773, 9777, 9778, 9779, 9786, 9789, 9792,
        9794, 9797, 9798, 9800, 9802, 9803, 9806, 9809, 9816, 9829, 9832, 3035 and 3041
        on the Frontier Construction account, drawn on Eagle Valley Bank, dated from
        January 24, 2005 through April 25, 2005, submitted as bearing the non-requested
        known writing and signatures of Jon C. Christopher.

    **K-8.** Original check numbers 9627, 9638, 9640, 9647, 9650, 9651, 9750, 9754, 9761,
        9774, 9783, 9793, 9801, 9807, 9811, 9812, 9817, 9819, 9821, 9833, 9836, 9837,
        3033, 3042, 3046, 3052, 3060, 3157, 3163, 3166, 3500 and 3501 on the Frontier
        Construction account, drawn on Eagle Valley Bank, dated from February 4, 2005
        through August 25, 2005, submitted as bearing the non-requested known
        writing and signatures of Jon C. Christopher.

Page 3 – Mr. John Sperry
April 11, 2008

## EXAMINATION REQUESTED:

Examine and compare the questioned signatures, initial and date appearing on Exhibits Q-1 through Q-3 with the submitted known writing of Jon C. Christopher (Exhibits K-1 through K-8) and determine if there is common authorship.

Conduct other examination that may be of assistance in determination of authenticity or production of the questioned materials.

## EXAMINATION METHOD:

Non-destructive examination was made utilizing stereoscopic magnification, appropriate illumination, however no instrumentation was available due to examination in a field setting. Appropriate methods of examination applying standard principles in the forensic examination of documents were utilized. Findings and images were recorded for future reference and illustration of the examination process and results.

An examination of handwriting involves evaluation of discriminating characteristics in the written forms and their relationship to each other. Elements such as arrangement and formation habits, style and form, connections, dimensions, slant, size and spacing relationships, approaches and terminations, writing movement, pen pressure, rhythm, speed and other characteristics are evaluated. Additional factors such as the nature and sufficiency of the materials, and both extrinsic and intrinsic influences are considered.

Writing, in general, is habitual. A principle in the evaluation of writing characteristics is that all writers have a range of variation in their writing. No two entries will exactly overlay in all respects unless reproduced from a common model. Natural variation occurs due to the imprecision of the human ability to reproduce patterns with machine-like accuracy and is a normal, and significant, characteristic of writing habit. The foundation for the conclusion is based upon a *combination* of the discriminating characteristics including the same range of variation. Precise correspondence of writing habits is frequently indicative of tracing, simulation or manipulation by transfer via tracing, cut and paste composite, tape or wax paper lift, electronic editing on a copier, and/or manipulation by computer utilizing software and scanners.

## EXAMINATION CONCLUSIONS:

After examination and comparison of the submitted material, the evidence indicates the following:

**1.** Comparison of handwriting features within the questioned Exhibit Q-1 through Q-3 signatures, initials and date with the submitted known standard of 275-plus signatures, handprinting, numerals and initials (Exhibits K-1 through K-8) found a lack of agreement between the questioned and known materials. No submitted known signature, initial or date was found to correspond to the questioned entries in any significant manner.

Page 4 – Mr. John Sperry
April 11, 2008

Numerous significant dissimilarities exist between the questioned signatures, dates and initials appearing on Exhibits Q-1 through Q-3 and the submitted known writing of Jon C. Christopher, author of Exhibits K-1 through K-8. **It is highly probable that Jon C. Christopher is not the writer of this material**.

No evidence was found upon which to base any significant association of the questioned writing with the writing habit of Jon C. Christopher. A high probability conclusion is given as opposed to a full elimination due to (a) the difficulty of eliminating a skilled writer's full ability, and (b) the lack of the original document of Exhibit Q-3 for examination.  Comparison was made to a robust known standard that included informal writing (Attachment A), formal writing (Attachment B) and requested testing of Mr. Christopher as to his ability to vary, change and disguise his signature style (Attachment C).

This conclusion is based on a dissimilar combination of writing patterns and features repeating consistently in the questioned and the known writing. Pattern characteristics evaluated include formation, height and spacing relationships, proportions within a formation, termination and connecting strokes, slant, size, and baseline alignment.

Attachments D and E illustrate comparison of the questioned date and initials.

**2.** The questioned "Jon C. Christopher" signatures appearing on Exhibits Q-1 through Q-3 display characteristics indicating while not genuine signatures, instead evidence exists **that it is highly probable that the questioned signatures are attempts to simulate or trace the genuine signature of Jon C. Christopher.**

Microscopic examination of the original questioned signatures and initials found that the writing demonstrated a few areas of pen lifts, addition to the writing stroke and overwriting. These characteristics are often indicative of attempts to trace or simulate a genuine writing style or unfamiliarity with the questioned writing material or habit.

Both traced and simulated writing, while bearing pictorial similarity to a genuine writing style, often have the appearance of having been drawn as opposed to naturally executed. The basic formation and structure of letters, their slant, size and height relationships and attention to more obvious versus the less conscious features are commonly observed in an imitation of genuine writing styles.

Attachments E and F display areas in the questioned material where pen lifts and overwriting exist. While the line quality (rhythm, fluency, speed and pressure) of the questioned material is not degraded, the lack of accurate formation of the signature features in order and relationship to one another is seriously flawed.

**3.** Indentation tests were conducted on selected pages of Exhibits Q-1 and Q-2. **No significant findings were developed or interpreted.**

Copies of the results of testing are available upon request.

Page 5 – Mr. John Sperry
April 11, 2008

## EXAMINER COMMENTS:

### 1. Limitations due to the lack of original documents for examination and comparison:

The examination of a copy or an image in lieu of the original written material places limitations on the findings of the Forensic Document Examiner.  The quality of the copy may make some difference in evaluation of the document, however many of the following problems may exist in examination of any type or generation of copy.

Limitations to the examination of handwriting include clarity of fine detail such as pen lifts versus drag strokes, retouching, shading, direction of the writing movement, the sequence of strokes, line quality, tremor and/or hesitation, speed of the writing, pen pressure, remnants of lines from tracing, remnants of indentations from tracing, flares, ticks, drag strokes (fine detail), efforts at disguise, use of a faulty writing instrument and characteristics of writing affected by surrounding conditions.

### 2. Explanation and illustration of the conclusion:

American Society for Testing and Materials E-1658 (Standard Terminology for Expressing Conclusions of Forensic Document Examiners) outlining the scale of conclusions and terminology utilized to express opinion gradations in comparison of handwriting and a Standard Guide for Examination of Handwritten Items (ASTM E2290) and a  Standard Guide for Indentation Examinations (ASTM E2291) outlining the protocol and considerations utilized in the examination processes accompany this report.

Additional charts illustrating the examinations and conclusions described in this report may be prepared for demonstration at trial.

Textbook references related to the considerations and reasoning processes utilized are available upon request.

## DISPOSITION OF EVIDENCE:

Exhibits Q-1 through Q-3 were returned to Mr. Robben on March 28, 2008.  Exhibits K-7 and K-8 will be returned to S.A. Ingram in the upcoming week. All other submitted materials are being retained at this time.

Karen S. Runyon
Forensic Document Examiner